No. 43,958

Murl D. White, *Appellant,* v. Sherman H. Crouse, Warden of the Kansas State Penitentiary, *Appellee.*

(396 P. 2d 333)

Opinion filed November 7, 1964.

*Charles S. Scott,* of Topeka, argued the cause, and *Samuel C. Jackson,* of Topeka, was with him on the briefs for the appellant.

*Richard H. Seaton,* Assistant Attorney General, argued the cause, and *William M. Ferguson,* Attorney General, was with him on the briefs for the appellee.

The opinion of the court was delivered by

Parker, C. J.: This is an appeal from a judgment of the district court of Leavenworth County denying petitioner (Murl D. White), who is presently serving a life sentence in the state penitentiary for the crime of murder in the first degree (G. S. 1949, 21-401), a writ of habeas corpus.

The undisputed facts required for a proper understanding of the contentions advanced by petitioner on appeal can be stated thus:

On the morning of August 1, 1954, at approximately 9 a. m. petitioner surrendered himself to the police department of Coffeyville, Montgomery County, Kansas, and voluntarily advised the desk sergeant that he had just killed Jack Eugene Akers and would burn for it. He then asked to see the chief of police. His request was granted and that officer talked with him for half an hour. About 9:30 a. m. on the same day the County Attorney came to the police station. The chief and the County Attorney then talked with petitioner for two or three hours, during which time he signed a written confession.

On August 2, 1954, petitioner was taken before a proper magistrate court in Montgomery County, under a complaint and warrant charging him with the crime of murder in the first degree, where his

preliminary hearing was set for August 11, 1954, and he was committed to jail without bail.

On August 10, 1954, the state upon written application asked the court to continue the preliminary hearing until August 18. The following day this application was granted. On August 17 the state upon written application asked the court to continue the preliminary hearing until August 28. This application was granted on August 18. On August 27 the state requested the court to continue the preliminary hearing until September 1, 1954. This application was granted on August 28.

On September 1, 1954, petitioner being present and the state represented by the County Attorney, the court, after announcing its readiness to proceed, recorded the following:

"THE COURT: Mr. White, you don't have anybody to represent you in this preliminary hearing?

"MR. WHITE: I was supposed to have, but my brother . . .

"THE COURT: I advised you last Saturday that the Preliminary would be held today, you understand that?

"MR. WHITE: Yes sir.

"THE COURT: Well we will go ahead with the preliminary . . . ?"

Thereupon the examining magistrate proceeded with the preliminary hearing and, after consideration of the evidence adduced, the petitioner was bound over to the district court of Montgomery County for trial on the charge of murder in the first degree.

On September 13, 1954, the County Attorney having theretofore filed an information in the office of the clerk of the district court of Montgomery County charging petitioner with murder in the first degree for the killing of Jack Eugene Akers, petitioner appeared before the district court of that county for arraignment without counsel. Noting this situation, the court first offered petitioner an opportunity to employ counsel of his own choosing but upon inquiry found that he was without funds and unable to do so. The court then appointed Jake L. Liberman of Caney, an able and respected member of the Kansas Bar, who had been practicing law in Montgomery County for many years, to represent petitioner. Thereafter, the information having been read to petitioner and after receiving an affirmative answer to an inquiry as to whether he had consulted fully with his court-appointed counsel, the court proceeded with the arraignment and inquired what plea petitioner desired to enter to the charge of murder in the first degree. Instead

of responding to this inquiry petitioner stood mute. Thereupon, in accord with the law, the court entered a plea of not guilty for petitioner and set his case for trial by jury on October 11, 1954.

Thereafter, and on October 6, 1954, Jake L. Liberman, the court-appointed counsel, appeared and asked to be allowed to accept private employment from the petitioner. This request was granted. Three days later, and on October 9, petitioner's two attorneys, Mr. Liberman and Walter S. Keith, the latter being another experienced outstanding member of the Kansas Bar, requested permission to withdraw the former plea of not guilty. This request was granted.

Subsequently, the information was again read to the petitioner who, now represented by two privately employed attorneys, upon being questioned by the court as to his understanding of the charge against him and his plea thereto responded as follows:

"THE COURT: Now Mr. White, you have heard read the information charging you with the crime of murder in the first degree, did you hear the information read?

"MR. WHITE: I heard it, yes sir.

"THE COURT: You understand the nature of the charge?

"MR. WHITE: Well I understand. It is not all true.

"THE COURT: Do you understand the charge?

"MR. WHITE: Yes sir.

"THE COURT: Are you now ready for arraignment on that charge?

"MR. WHITE: Yes sir.

"THE COURT: The court now asks what is your plea to the charge of murder in the first degree, as contained in the information now read. Guilty or not guilty?

"MR. WHITE: I will have to say I was guilty because I killed him, but I did not premeditate it.

"THE COURT: We don't accept any conditional plea, you are either guilty or not guilty.

"MR. WHITE: Well I will say I am guilty.

"THE COURT: The . . . you don't say it, it is what you are.

"MR. WHITE: I say I am guilty.

"THE COURT: That is under condition . . .

"MR. WHITE: I was the man who shot and killed him.

"THE COURT: Well we will set it for trial if you don't want to plead guilty.

"MR. WHITE: I am guilty, I will plead guilty.

"THE COURT: I am not asking you to plead guilty. Do you want the question propounded again?

"MR. WHITE: *No, I think I thoroughly understand it.*

"THE COURT: Then what is your plea to the charge in the information as read, guilty or not guilty?

"MR. WHITE: Guilty." (Emphasis supplied.)

Following transpiration of the foregoing events petitioner's plea of guilty to the crime of murder in the first degree was accepted by the court and on October 16, 1954, he was sentenced to confinement at hard labor in the Kansas State Penitentiary, pursuant to the provisions of G. S. 1949, 21-401 and 21-403.

Petitioner commenced the instant proceeding, seeking his release from custody under his 1954 judgment and sentence, in the district court of Leavenworth County on October 31, 1963. There, following a full and complete hearing, the court found that the evidence failed to show he was being unlawfully deprived of his liberty and, on December 18, 1963, judgment was rendered accordingly. Subsequently, and on January 7, 1964, petitioner's motion for a new trial was overruled. Thereupon he perfected this appeal wherein he is entitled to appellate review of questions raised by him in the statement of points included in his record on appeal. That statement reads:

"1. The trial court erred in denying Petitioner's petition for writ of habeas corpus and remanding him to the custody of the respondent warden, which was contrary to the law and the evidence which disclosed:

"(a) That Petitioner was held incommunicado during which period an involuntary confession was elicited from him in violation of his rights guaranteed to him under the due process clause of the fourteenth amendment to the United States Constitution and the Bill of Rights of the Constitution of the State of Kansas.

"(b) That the examining magistrate was guilty of causing an unreasonable delay in disposing of Petitioner's preliminary hearing contrary to the provisions of G. S. 49 62-611 and 62-614 and the due process clause of the fourteenth amendment to the United States Constitution and the Bill of Rights of the Constitution of the State of Kansas.

"(c) That the examining magistrate did not give opportunity to Petitioner to be represented by counsel of his choosing at the preliminary hearing nor did the examining magistrate make proper inquiry of Petitioner to ascertain Petitioner's financial ability to retain counsel to represent him at his preliminary hearing in violation of his rights guaranteed to him under the due process clause of the fourteenth amendment to the United States Constitution, and the Bill of Rights of the Constitution of the State of Kansas.

"(d) That Petitioner's residence was unlawfully searched and evidence was illegally obtained in violation of his rights under the due process clause of the fourteenth amendment to the United States Constitution and the fourth amendment to the United States Constitution and the Bill of Rights of the Constitution of the State of Kansas.

"(e) That the plea of guilty to murder in the first degree was involuntary and the result of misunderstanding and coercion by the court which rendered the court without jurisdiction to pass sentence on Petitioner.

"2. The trial court erred in denying Petitioner's motion for new trial in order to re-examine and re-evaluate the issues involved herein."

Appellant makes no attempt to argue the merits of point 1 (a), *supra*. The cold hard facts, as heretofore stated, are that within a few minutes after the killing he walked into the police station and there, of his own volition and not at the behest of any law enforcement official, voluntarily confessed—both orally and in writing—that he had killed Akers; and that to this day he has made no claim that his confession was procured by force, deceit, fraud or coercion. Under the related facts and circumstances we are convinced appellant's claim he was held incommunicado and an involuntary confession was elicited from him in violation of his constitutional rights lacks merit and cannot be upheld—and we so hold. Indeed, we know of and are cited to no decisions in this state or elsewhere which, under similar conditions, warrant or require a conclusion to the contrary.

The record as to point 1 (b), *supra,* discloses that the examining magistrate continued appellant's preliminary hearing on three occasions, each continuance being for a period of less than ten days. It is claimed these continuances constituted an unreasonable delay in disposing of his preliminary hearing which resulted in a violation of his constitutional rights.

Our statute G. S. 1949, 62-611, so far as here pertinent, provides:

"Any magistrate may adjourn an examination or trial pending before himself from time to time as occasion shall require, not exceeding ten days at one time, without the consent of the defendant. . . ."

G. S. 1949, 62-614, reads:

"The magistrate before whom any person is brought upon a charge of having committed an offense, shall as soon as may be examine the complainant and the witnesses to support the prosecution, on oath, in the presence of the party charged."

The foregoing sections of the statute authorize the continuances in question and in the absence of an affirmative showing the granting thereof was unnecessary and unreasonable, this claim has no merit. The record presented is wholly devoid of any such showing, hence it must be denied. Further reasons for its denial will appear from our disposition of the next point relied on.

In leaving this question we are not unmindful that appellant relies on *Whalen v. Cristell,* 161 Kan. 747, 173 P. 2d 252. That case is clearly distinguishable from the one at bar. All we there held

was that a magistrate could not arbitrarily continue the hearing of a preliminary examination for an indefinite period of time and that, under such circumstances, a defendant who had been in jail for some four to six months without a commitment was unlawfully deprived of his liberty and entitled to a writ releasing him from custody.

In point 1 (c), *supra,* appellant makes claims that the examining magistrate (1) did not afford him an opportunity to be represented by counsel of his own choosing and (2) failed to appoint counsel for him at the preliminary hearing. It is clear that claim (1) finds no support in the record. Therefore it cannot be sustained.

There are at least three reasons why a like decision must be reached with respect to claim (2) of the same point. These reasons are thoroughly discussed and are well stated in our recent decision of *State v. Daegele,* 193 Kan. 314, 393 P. 2d 978, where it is said and held:

"In the first place, under the laws of Kansas a preliminary examination is not a 'trial' in the ordinary sense of the word. (*State v. Badders,* 141 Kan. 683, 42 P. 2d 943; [*In re Mortimer,* 192 Kan. 164, 386 P. 2d 261.]) The purpose of a preliminary examination for one charged with a felony is to determine whether an offense has been committed and whether there is probable cause for charging a defendant with the commission thereof. The proceeding is not a trial in the sense that one may be found 'guilty.' A defendant is bound over for trial only where the state establishes that an offense has been committed and that there is probable cause for charging him with its commission—otherwise he is to be discharged. (G. S. 1949, 62-618.) Under the provisions of G. S. 1949, 62-615, a defendant has the right to be assisted by counsel at a preliminary examination, but there is no statute requiring the appointment of counsel in such a proceeding, and it has been held many times that failure to appoint counsel at a preliminary examination is not error. (*Fry v. Hudspeth,* 165 Kan. 674, 676, 197 P. 2d 945; *Martin v. Edmondson,* 176 Kan. 374, 270 P. 2d 791; *State v. Crowe,* 190 Kan. 658, 378 P. 2d 89, and *State v. Naillieux,* 192 Kan. 809, 391 P. 2d 140 [*certiorari* denied, ____ U. S. ____, 13 L. ed. 2d 67, 85 S. Ct. 131].) Moreover, the well-established rule is that any so-called alleged 'irregularity' pertaining to a preliminary examination is deemed to be waived where a defendant enters a voluntary plea of guilty in the district court. (*Cooper v. Hudspeth,* 166 Kan. 239, 240, 199 P. 2d 803; *Foster v. Hudspeth,* 170 Kan. 338, 224 P. 2d 987 [petition for writ of certiorari dismissed on motion of petitioner, 340 U. S. 940, 95 L. ed. 678, 71 S. Ct. 503]; *Plasters v. Hoffman,* 180 Kan. 559, 560, 305 P. 2d 858, and *Thomas v. Hand,* 184 Kan. 485, 337 P. 2d 651.)" (p. 316.)

In passing it should be noted that what has just been quoted from the *Daegele* case supplies the additional reasons, to which we have previously referred, supporting our denial of claims made by appellant with respect to point 1 (b).

As to appellant's point 1 (d), *supra*, there is not even an iota of evidence in the record to sustain his position that his residence was unlawfully searched and evidence illegally obtained. Moreover, his counsel has not seen fit to argue the question. Under these circumstances we are forced to hold that this point has not been established and cannot be sustained.

We turn now to appellant's point 1 (e), *supra*, wherein it is charged, and his present counsel strenuously urge, that his plea of guilty of the crime of murder in the first degree was involuntary and the result of misunderstanding and coercion by the trial court. In doing so, and in order that there may be no misunderstanding as to what took place in the district court of Montgomery County in 1954 when, accompanied by his two privately employed attorneys, appellant had entered a plea of guilty to the crime of murder in the first degree and was being interrogated by the sentencing court as to whether that plea should be accepted, we direct attention to the record, which we have previously set forth at length in this opinion. That record, as we read it, despite strenuous contentions of appellant's counsel to the contrary in the instant proceeding, clearly establishes that appellant's plea of guilty was voluntary and not the result of misunderstanding and coercion by the sentencing court. Having so concluded it necessarily follows that the point now under consideration lacks merit and cannot be upheld.

Appellant's point 2 charging error in the overruling of his motion for a new trial in the instant case is neither briefed nor argued. In that situation this point presents nothing for review and it must be overruled. Even so, it should perhaps be stated that we have carefully examined the record and find nothing which warrants or permits a conclusion the district court of Leavenworth County erred in overruling such motion.

What has been heretofore stated and held compels a conclusion the judgment denying the writ and remanding appellant to the custody of the warden of the State Penitentiary must be affirmed.

It is so ordered.